IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

AT HUNTINGTON

DAVID M. BECKETT,

        Plaintiff,

V.                                       CIVIL ACTION NO. 3:05-0642

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.

## MEMORANDUM ORDER

In this action, filed under the provisions of 42 U.S.C. §405(g), plaintiff seeks review of the final decision of the Commissioner of Social Security denying his application for disability insurance benefits. The case is presently pending before the Court on cross-motions of the parties for judgment on the pleadings.

Plaintiff filed his application on July 17, 2003, alleging disability commencing May 29, 2002, as a consequence of pain in his back, neck, arms and hands. On appeal from an initial and reconsidered denial, an administrative law judge, after hearing, found plaintiff not disabled in a decision which became the final decision of the Commissioner when the Appeals Council denied a request for review. Thereafter, he filed this action seeking review of the Commissioner's decision.

At the time of the administrative decision, plaintiff was forty-nine years of age and had obtained a high school education. His past relevant employment experience consisted of work

as a bricklayer. In his decision, the administrative law judge found that plaintiff suffered from "status-post cervical fusion, lumbar spondylosis, and status-post rotator cuff tear," impairments he considered severe. Though concluding that plaintiff was unable to perform his past work,[1] the administrative law judge determined that he had the residual functional capacity for a significant range of sedentary level work. On the basis of this finding, and relying on Rule 201.21 of the medical-vocational guidelines[2] and the testimony of a vocational expert, he found plaintiff not disabled.

From a review of the record, it is apparent that substantial evidence supports the Commissioner's decision. While the forms plaintiff completed with his application indicate he suffered a work-related neck and shoulder injury on May 28, 2002, causing him to leave work, notes from Joseph Justice, D.O., his treating physician, reflect he had been treating plaintiff as early as January 2002 for back and neck pain which was controlled "fairly well" with Oxycontin and remained this way through 2002 despite a flare-up in May caused by plaintiff's fall at work. This physician also gave plaintiff injections in the left arm for tendinitis and in the shoulders. An MRI of the cervical spine in July of 2002 was interpreted as showing degenerative changes and bulging annuli at C4-5 with borderline herniated nucleus pulposus (HNP) at C5-6 with significant impingement on the cervical cord. MRI's of the lumbar spine and thoracic spine performed in August 2002 were interpreted as showing degenerative changes and bulging annuli as well.

---

[1] This finding had the effect of shifting a burden of production to the Commissioner with respect to other work plaintiff was capable of performing. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981); McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

[2] 20 C.F.R. Part 404 Subpart P, Appendix 2, Table No. 1.

Dr. Panos Ignatiadis, a neurosurgeon, examined plaintiff on referral on January 22, 2003, and documented full range of motion of the neck with mildly positive impingement sign in both shoulders. He did not feel the C5-6 disc protrusion was the cause of plaintiff's symptoms and noted there were no neurological deficits and nothing on the MRI to necessitate surgery. He diagnosed a "profound" muscle sprain with possibility of some injury to the shoulder joint and recommended evaluation by an orthopedic surgeon. Dr. Justice reported on March 10, 2003, that plaintiff was experiencing tendinitis in his right elbow for which he had administered an injection.

Dr. Jack Steel, an orthopedic surgeon, evaluated plaintiff on May 1, 2003, and observed left shoulder tenderness without atrophy or spasm, tenderness of the left acromioclavicular joint and slight prominence of the right clavicle. He found full range of motion of the neck as had Dr. Ignatiadis. It was Dr. Steel's impression that plaintiff had mild pain in the left shoulder with "minimal" impingement but no evidence of a rotator cuff tear. He told plaintiff he did not feel there was a major problem with his shoulder. Interestingly, Dr. Justice observed on June 5, 2003, that plaintiff had "recently" experienced a worsening of pain while lifting blocks "at work," and he was now experiencing muscle spasm in his shoulder despite treatment. Diagnosing acute shoulder strain, he injected five tender points in the left trapezius and shoulder.

Two weeks later, plaintiff was seen by another neurosurgeon, Dr. Mazagri, for evaluation of his neck. Following a new MRI, taken July 23, 2003, and again interpreted as showing a diffuse disc bulge at C5-6, causing flattening of the thecal sac, this physician felt plaintiff should have surgery, and he performed an anterior cervical discectomy and fusion at the C5-6 level on October 31, 2003. Follow-up reports from November 2003, and January 2004, reflect plaintiff's symptoms were markedly improved and he was recovering well. Plaintiff apparently fell

3

subsequent to the January appointment and experienced increased symptoms, according to a February 12, 2004, report from Dr. Mazagri. He had tenderness and muscle spasm over the lower cervical spine. It was recommended he continue with rehabilitation and physical therapy. An MRI and second visit to Dr. Steel revealed a need for left shoulder surgery and on April 26, 2004, this physician performed a diagnostic arthroscopy, left glenohumeral joint, with arthroscopic subachromial decompression and distal clavicle excision. He again noted the rotator cuff was intact.[3] Follow-up reports reflect plaintiff progressed well and on July 14, 2004, was released to return to work beginning on July 19, 2004. The record contains just one more recent report from Dr. Justice, dated September 23, 2004, when plaintiff was seen requesting an injection into his left shoulder and right elbow.

Though plaintiff has reported a number of times he has carpal tunnel syndrome in both hands/arms, there is no diagnosis of this condition in the medical reports. In fact, Dr. Justice noted his complaint of a knot on his wrist in August 2003 but diagnosed it as a ganglion cyst. The administrative law judge did not find this alleged impairment "severe" and this finding clearly has substantial support in the record.

Residual functional capacity assessments were submitted by state agency medical advisors who opined plaintiff could perform light level work requiring no more than occasional climbing, balancing, stooping, kneeling, crouching and crawling. Dr. Wild, a chiropractor who treated plaintiff, also completed an assessment of residual functional capacity, finding that plaintiff could lift and carry consistent with light level work but could stand/walk less than two hours per day

---

[3] Dr. Steel made it clear in his reports that there was no problem with plaintiff's rotator cuff, yet the administrative law judge concluded this was one of plaintiff's "severe" impairments.

and sit less than six hours, as well as needing to alternate these activities. The administrative law judge determined this would effectively render plaintiff disabled and rejected Dr. Wild's conclusions on the basis that he was a chiropractor, not a physician,[4] and his opinions regarding sitting, standing and walking limitations were not supported by objective findings. The administrative law judge's determination in this regard is amply supported by this evidence.

The administrative law judge did determine that plaintiff's residual functional capacity was more limited than the state agency medical advisors assessed. He found plaintiff limited to sedentary level work with an ability to lift/carry up to ten pounds, stand/walk two hours per work day and sit six hours and must alternate sitting and standing. Due to plaintiff's complaints of radiating pain symptoms in his arms and hands, the administrative law judge found he could frequently but not constantly reach, handle and finger and could not reach overhead with the left upper extremity. Further, plaintiff could not perform jobs involving steps or unprotected heights. Due to pain, the administrative law judge determined plaintiff would be limited to unskilled jobs, but he could understand, remember and carry out simple job instructions. After considering the record as a whole, the court concludes that substantial evidence supports the administrative law judge's findings in this regard. While Dr. Justice noted plaintiff's complaints of anxiety on a few occasions, and he treated this with Xanax, there is no evidence of mental health treatment and no evidence this condition was anything more than occasional and mild. The administrative law judge's finding of no severe mental impairment is also supported by substantial evidence.

---

[4] 20 C.F.R. §404.1513(a) does not list chiropractors as among the "acceptable medical sources" who can provide evidence to establish an impairment. See also, Lee v. Sullivan, 945 F.2d 687, 691 (4th Cir. 1991).

While plaintiff complains of significant limitation on his activities as a result of pain, the administrative law judge, taking account of the evidence as well as his observations of plaintiff at the hearing, determined that his credibility was only fair. Persuasive to him were plaintiff's ability to perform a number of daily activities such as driving, the fact that his pain was frequently described by his treating physician as controlled with medication; and, the absence of evidence that plaintiff's ability to sit was limited. In view of the evidence, and taking account of the administrative law judge's "opportunity to observe the demeanor and to determine the credibility of the claimant," these findings are entitled to "great weight." Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). Finally, in response to hypothetical questioning which included plaintiff's age, education, work experience and a reasonably accurate profile of his functional capacity and overall medical condition, a vocational expert testified that there were a significant number of sedentary jobs in the national economy which plaintiff could perform.

Resolution of conflicts in the evidence is within the province of the Commissioner, not the courts, Thomas v. Celebrezze, 331 F.2d 541 (4th Cir. 1964), and if the Commissioner's findings are supported by substantial evidence this Court is bound to uphold the decision. Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972). In the present case, the evidence, though somewhat conflicting, provides substantial support for the Commissioner's findings with respect to plaintiff's impairments and residual functional capacity. Under such circumstances, the decision of the Commissioner must be affirmed.

On the basis of the foregoing, it is **ORDERED** that plaintiff's motion for judgment on the pleadings be denied, that the like motion of defendant be granted and the decision of the

Commissioner be affirmed.  All matters in this case being concluded, it is **ORDERED** dismissed and retired from the Court's docket.

The Clerk is directed to transmit a copy of this Memorandum Order to all counsel of record.

ENTER: July 30, 2007

/s/ Maurice G. Taylor, Jr.
MAURICE G. TAYLOR, JR.
UNITED STATES MAGISTRATE JUDGE